IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

CLERKS OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

MAY 24 2020

JULIA C. DUDLEY, CLERK
BY:  s/ MARTHA L. HUPP
DEPUTY CLERK

| | | |
|---|---|---|
| **ELDRIDGE ROOSEVELT MEEKS, III,** | ) | |
| *Plaintiff* | ) | |
| | ) | |
| **v.** | ) | **CASE NO.**  4:20CV00029 |
| | ) | |
| **THE CITY OF DANVILLE** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **and** | ) | |
| | ) | |
| **JACOB AMOS, LARRY DWAYNE LAND,** | ) | |
| **JOHN PULLEY, JONATHAN EPPS,** | ) | |
| **TODD HAWKINS and WILLIAM SHIVELY,** | ) | |
| *in their individual capacities* | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **JOHN DOES 1-10,** | ) | |
| *Defendants.* | ) | |

## COMPLAINT

1. This action is brought by Plaintiff Eldridge Roosevelt Meeks, III ("MEEKS") to recover damages, fees and costs arising from the injuries he suffered due to the excessive force used during his apprehensions and arrest by officers of the Danville Police Department on May 25, 2018.  MEEKS asserts federal claims pursuant to 42 U.S.C. § 1983 as well as common law civil claims for (i) battery, (ii) intentional infliction of emotional distress and (iii) gross, willful, wanton and reckless negligence.

2. On May 25, 2018, several officers of the Danville Police Department ("DPD"), including the individual defendants, assembled to arrest MEEKS on outstanding non-violent felony warrants.  The officers knew MEEKS and they also knew that he had a history of eluding

arrest.  The officers located MEEKS hiding in a bathroom of a duplex home located at 265 Lovell Drive.  MEEKS was apprehended and his wrists were handcuffed behind his back.

3.  MEEKS fled and ran out of the front door into the yard with his hands cuffed behind his back.  Officer JACOB AMOS immediately drew a Taser and fired it into MEEKS' back, without attempting to capture MEEKS without force and despite knowing that MEEKS was handcuffed, that his shorts were falling to his ankles as he ran, and that he posed no immediate danger to anyone.  MEEKS fell to the ground but was not injured.  He rose to a sitting position and Officer Amos, without any justification, attempted to deploy the Taser a second time.  However, the Taser probes had become dislodged, so this second attempt failed.

4.  Officer WILLIAM SHIVELY ran to the scene and, acting in concert with other officers, maliciously and contrary to the policy of the Danville Police Department, drove MEEKS headfirst into the ground and also forced a baton against MEEKS' neck and shoulder with such force that it broke MEEKS' right clavicle.  When MEEKS began screaming in pain due the fracture, SHIVELY climbed onto MEEKS' back, thereby breaking several of his ribs and causing a dangerous condition called "chest flail" which renders it difficult or impossible for a victim to breathe properly.  MEEKS also suffered a collapsed lung. SHIVELY continued to force MEEKS headfirst into the ground while he screamed in pain and while he repeatedly reported that he was having trouble breathing.  All of the officers at the scene discounted and ignored MEEKS' life-threatening injuries and delayed providing or seek medical attention to him.

5. MEEKS was arrested and transported to a hospital in Danville, but the injuries he received at the hands of the defendants were so severe that he was flown to Roanoke by helicopter for emergency treatment. MEEKS required emergency surgery and incurred pneumonia as result of the injuries inflicted upon him.

6. The incident was captured by body-worn camera, which recorded many of the events described above. The force used against MEEKS was not only contrary to the Danville Police Department's written policy, but was also clearly objectively unreasonable and excessive and therefore violated his Fourth Amendment rights. It is also clear that officers acted with malice, anger and deliberate disregard of MEEKS' rights and that they conspired to do so. Finally, it is obvious that DPD officers have not been trained in the limits of the constitutional use of force and weapons and that the policymakers in the CITY OF DANVILLE were deliberately indifferent to the obvious need to train the police officers.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over the federal claims pursuant 28 U.S.C. §§1331 and 1343 as such jurisdiction arises under 42 U.S.C. §§1983 and 1985.

8. This Court has supplemental jurisdiction over the state claims asserted in this action pursuant to 28 U.S. Code § 1367.

9. Venue is proper in this district under 28 U.S.C. §1391(b), because (i) each of the named defendants is a resident of the Western District of Virginia pursuant to to 28 U.S.C. § 1391(c)(2), and (ii)  pursuant to 28 U.S.C. § 1391(b)(2) all of the events or omissions

giving rise to the claim occurred in the City of Danville in the Western District of Virginia.

## PARTIES

10. Plaintiff **ELDRIDGE ROOSEVELT MEEKS, III** is an adult resident of Pittsylvania County, Virginia.

11. Defendant **CITY OF DANVILLE** is a city incorporated pursuant to the laws of the Commonwealth of Virginia. The City of Danville operates the Danville Police Department ("DPD").

12. Defendant **JACOB AMOS** was, on May 25, 2018, a police officer employed by the Danville Police Department.

13. Defendant **LARRY DWAYNE LAND** was, on May 25, 2018, a police officer employed by the Danville Police Department.

14. Defendant **JOHN PULLEY** was, on May 25, 2018, a police officer employed by the Danville Police Department.

15. Defendant **JONATHAN EPPS** was, on May 25, 2018, a police officer employed by the Danville Police Department.

16. Defendant **TODD HAWKINS** was, on May 25, 2018, a police officer employed by the Danville Police Department.

17. Defendant **WILLIAM SHIVELY** was, on May 25, 2018, a police officer employed by the Danville Police Department.

18. Defendant **JOHN DOES 1-10** were, on May 25, 2018, police officers employed by the

Danville Police Department.  The identities of these defendants are currently unknown to the Plaintiff.  Defendants **AMOS, SHIVELY, LAND, PULLEY, EPPS, HAWKINS** and **JOHN DOES 1-10** will be hereafter referred to collectively as the defendant **OFFICERS**.

**FACTS**

**I.  Written policies of the Danville Police Department**

19.  The Danville Police Department provides guidance to its police officers through written policies and orders.

**Handcuffing and Restraints**

20.  A specific policy (Policy No. 302: "Handcuffing and Restraints") governs the use of handcuffs and other restraints by the DPD police officers.

21.  The policy (Policy No. 302.3 - "PREVENTING IN-CUSTODY DEATHS") provides that  DPD police officers should:

- ○  Get a subject off of his stomach as soon as he is handcuffed.

- ○  Refrain from sitting on a subject's back.

- ○  Get a subject immediate medical attention if required.

**Use of Force**

22.  A specific policy (Policy No. 300: "Use of Force") governs the use of force by the DPD police officers and provides "guidelines on the reasonable use of force."  The policy further states that "every member of this department is expected to use these guidelines to make decisions in a professional, impartial and reasonable manner."

23.  The Use of Force Policy (Policy No. 300.2.1 - "DUTY TO INTERCEDE") provides that

"[a]ny officer present and observing another officer using force that is clearly beyond that which is objectively reasonable under the circumstances shall, when in a position to do so, intercede to prevent the use of unreasonable force."

24. The Use of Force Policy (Policy No. 300.2.1 - "DUTY TO INTERCEDE" ) further provides that "[a]n officer who observes another employee use force that exceeds the degree of force permitted by law shall promptly report these observations to a supervisor."

25. The Use of Force Policy (Policy No. 300.5 - "REPORTING THE USE OF FORCE") requires DPD police officers to report any use of force to supervisors and to complete written documentation.  It demands doing so when Tasers or batons are used.

**Control Devices - Batons**

26. A specific policy (Policy No. 303: "Control Devices") governs the use and maintenance of "control devices" as described in the policy.

27. The policy (Policy No. 303.2 - "POLICY") authorized DPD police officers to use control devices to control individuals who are violent or who demonstrate the intent to be violent.

28. One of the control devices described by the policy (Policy No. 303.5 - "BATON GUIDELINES") is the baton (also known as an "ASP").

29. The policy (Policy No. 303.5 - "BATON GUIDELINES") provides that batons should not be deployed to the head, neck, throat or spine.

30. The policy (Policy No. 303.12 - "REPORTING USE OF CONTROL DEVICES") requires DPD police officers to document the use of batons in both Use of Force and incident reports.

### Conducted Electrical Weapons - Tasers

31.  The use of conducted electrical weapons by DPD police officers is governed by a specific DPD policy (Policy No. 304 - "Conducted Electrical Weapon").

32.  A conducted electrical weapon can be used by police officers to incapacitate individuals by the deployment of electrode darts upon depression of a trigger.

33.  The Conducted Electrical Weapon policy (Policy No. 304.2 - "POLICY") provides that "[t]he Conducted Electrical Weapon is used to control a violent or potentially violent individual."

34.  The Conducted Electrical Weapon policy (Policy No. 304.5.1 - "APPLICATION OF THE CONDUCTED ELECTRICAL WEAPON") provides that "[m]ere flight from a pursuing officer, without other known circumstances or factors, is not good cause for the use of the Conducted Electrical Weapon to apprehend an individual."

### The Taser X26 Weapon

35.  The DPD issued a specific order (GENERAL ORDER: ADM.152) governing the use of Taser X26 weapons by DPD police officers.

36.  The Taser X26 is a particular model of conducted electrical weapon.

37.  The Taser X26 is dangerous and potentially deadly weapon.

38.  The DPD General Order ADM.152 provides that Tasers are to be handled using the same departmental safety rules that apply to the handling of firearms.

## II.  The events of May 25, 2018

39.  On May 25, 2018 the defendant OFFICERS assembled for the purpose of arresting MEEKS.

-7-

40. MEEKS was wanted on two non-violent felony warrants.

41. At approximately 11:20 p.m. on May 25, 2018, the defendant police officers responded to 265 Lovell Drive, a duplex home, to arrest MEEKS.

42. MEEKS was found inside the home at 265 Lovell Drive, hiding behind a bathroom door.

43. MEEKS was apprehended inside the home and his wrists were handcuffed behind his back.  He was directed to the front door by AMOS.

44. The officers knew MEEKS and addressed him as "Mickey."  At least one of them berated MEEKS.

45. When he reached the front door, MEEKS fled from the officers and ran into the yard to avoid arrest.[1]  His wrists remained handcuffed behind his back.

46. MEEKS did not at any time relevant to this Complaint engage in, threaten or exhibit any violent or dangerous behavior.

47. As soon as MEEKS fled, Officer Amos immediately followed MEEKS outside and aimed his Taser X26 at MEEKS' back.

48. Within five seconds after MEEKS breaking free, AMOS fired the Taser X26, striking MEEKS in the back and causing him to fall to the ground just a few feet from the front door of the home.

49. AMOS fired the Taser X26 only because MEEKS fled and in order to apprehend him.

50. MEEKS was not injured in the fall.  He did not moan or otherwise complain of breathing trouble or chest pain and he sat up immediately with his hands still handcuffed behind him.

---

1   MEEKS was charged with felony escape as result of this attempted flight but this charg was dismissed and he was was convicted only of misdemeanor flight from justice and given a suspended sentence in a plea bargain.

51. AMOS attempted to deploy the Taser again without any justification, however the Taser's electrode darts had become dislodged so the Taser did not deploy.

52. There was no reason for AMOS to attempt to deploy the Taser as MEEKS sat in the yard.

53. Several of the defendant OFFICERS quickly arrived at the scene where MEEKS was sitting in the yard.

54. One of the defendant OFFICERS was SHIVELY.

55. Immediately upon arriving at the scene, SHIVELY used a baton to drive MEEKS headfirst into the ground.

56. SHIVELY remarked to AMOS that he made a "good shot" with the Taser.

57. SHIVELY took a position on MEEKS' back and chastised him for running.

58. SHIVELY, assisted by the other defendant police officers, broke MEEKS' right clavicle and several of his right ribs and caused MEEKS to suffer from flail chest, a dangerous and life-threatening condition that prevents proper breathing.

59. MEEKS began screaming in agony and reported that he could not breathe.

60. Over the next few minutes, MEEKS reported at least twenty-four times that he was having difficulty breathing.

61. The officers utterly ignored MEEKS' complaints and screams of pain as they searched for the Taser probes.

62. One of the defendant OFFICERS dismissed MEEKS' complaints and told him "if you talkin', you breathin'."

63. One of the defendant OFFICERS asked MEEKS if he had "pooped himself."

64. None of the defendant OFFICERS sought immediate medical attention for MEEKS.

65.  Eventually, one of the defendant OFFICERS placed MEEKS into a sitting position, upon which MEEKS briefly passed out from his injuries.

66.  Several of the defendant OFFICERS discussed the fact MEEKS could not have run away from them.  One them said, "well, he won't goin' nowhere" and that "there was no way in hell that he would have got away."

67.  Eventually, EMS responded and transported MEEKS to Sovah Health – Danville, where his life-threatening injuries were diagnosed and a chest tube inserted.

68.  MEEKS was flown by helicopter to Carilion Hospital in Roanoke at approximately 4:00 a.m. on May 26, 2018, where he was admitted and treated with emergency surgery to repair multiple rib fractures.

69.  MEEKS stayed in Carilion Hospital until June 2, 2018, when he was discharged and transported to the Danville jail.

70.  MEEKS suffered the following injuries as result of the application of excessive force by the defendant police officers:

   ○  Pneumothorax (collapsed lung)

   ○  Acute hypoxic respiratory failure

   ○  Fracture of the right clavicle  (an image of the X-ray of this fracture is attached hereto and incorporated herein as **EXHIBIT A**)

   ○  Multiple displaced right side rib fractures with flail segment (an image of an X-ray of these fractures is attached hereto and incorporated herein as **EXHIBIT B**).

   ○  Pneumonia

   ○  Subcutaneous emphysema

○ Concussion

○ Abrasions, lacerations and contusions

71.  MEEKS suffered serious, life-threatening injuries at the hands of the defendant police

officers due their application of excessive and unreasonable force on May 25, 2018.

72.  MEEKS suffered excruciating pain, suffering, severe mental anguish, humiliation,

memory loss, distress and fear because of the application of excessive and unreasonable

force by the defendant police officers on May 25, 2018.

73. The OFFICERS were acting within the scope of their employment by DPD at all times

relevant to this Complaint.

74.  MEEKS continues to suffer from recurring headaches and memory loss due to the

injuries he suffered at the hands of the defendant police officers due their application of

excessive and unreasonable force on May 25, 2018.

**FIRST CAUSE OF ACTION**

**VIOLATION OF CIVIL RIGHTS: EXCESSIVE FORCE BY THE DEFENDANT AMOS
IN THE DEPLOYMENT OF A TASER AGAINST THE UNARMED AND HANDCUFFED
PLAINTIFF WHO POSED NO DANGER**

**(42 U.S.C. § 1983 - 4th and 14th Amendments)**

75.  All previous paragraphs of this complaint are incorporated herein by reference and are

re-alleged as if restated.

76.  "A taser, like 'a gun, a baton, . . . or other weapon,' is expected to inflict pain or injury

when deployed. It, therefore, may only be deployed when a police officer is confronted

with an exigency that creates an immediate safety risk and that is reasonably likely to be

cured by using the taser." *Estate of Armstrong v. Village of Pinehurst*, 810 F.3d 892 (4th

Cir. 2016)

77.  Use of a Taser against a non-violent fleeing individual who poses no imminent danger of harm, solely for the purpose of apprehending the fleeing individual, is unconstitutional and violates the Fourth Amendment and Fourteenth Amendment rights of the individual.

78.  MEEKS did not create an immediate safety risk when he fled with his arms handcuffed behind his back.  Indeed, AMOS and the other defendant OFFICERS knew there was no chance MEEKS could escape.

79.  AMOS deployed the Taser against MEEKS almost immediately – in less than five seconds from the time that MEEKS began to flee – and did not use alternative means of apprehending him.

80.  AMOS deliberately deployed the Taser against MEEKS instead of using alternative methods to apprehend him, including simply following him.

81.  The shorts that MEEKS wore began to fall to his ankles as he fled, thereby preventing him for running for more than a few seconds.  AMOS knew that these shorts were falling when he deployed the Taser and AMOS could have simply followed MEEKS until he was incapable of running.

82.  AMOS' second attempt to deploy the Taser, after MEEKS had been subdued and was sitting on the ground with his arms cuffed behind him, was not only objectively unreasonable and unconstitutional, but also a clear indication of both malice and an intent to punish MEEKS in anger.

83.  AMOS' deployment of the Taser against MEEKS was objectively unreasonable and an excessive use of potentially deadly force against a non-violent subject who posed no

imminent threat of danger to anyone.

84.  AMOS' deployment of the Taser was a direct cause of MEEKS' injuries

**SECOND CAUSE OF ACTION**

**VIOLATION OF CIVIL RIGHTS: EXCESSIVE FORCE BY THE DEFENDANT POLICE OFFICERS AFTER THE UNARMED AND HANDCUFFED PLAINTIFF HAD BEEN SUBDUED**

**(42 U.S.C. § 1983/4th and 14th Amendments)**

85.  All previous paragraphs of this complaint are incorporated herein by reference and are re-alleged as if restated.

86.  Contrary to both DPD policy and well-established law-enforcement best practice, SHIVELY, acting in concert with and assisted by the defendant OFFICERS deliberately placed the weight of his body on MEEKS' back as MEEKS lay face-down on the ground with his hands cuffed behind his back with such force to break MEEKS' ribs.  This force was unreasonable and excessive.

87.  SHIVELY placed the weight of his body on MEEKS' back maliciously and sadistically for the purpose of causing harm to MEEKS and did not do so in good faith to maintain or restore discipline.

88.  While MEEKS was lying face down on the ground with his hands cuffed behind his back, SHIVELY applied force with a baton to MEEKS' neck and clavicle sufficient to break his clavicle and to deliberately inflict unnecessary and wanton pain and suffering upon MEEKS.

89.  SHIVELY did not apply force with his baton in good faith to maintain or restore discipline, but instead he did so maliciously and sadistically for the purpose of causing

harm to MEEKS.

90. SHIVELY acted with actual malice

### THIRD CAUSE OF ACTION

**VIOLATION OF CIVIL RIGHTS: DELIBERATE INDIFFERENCE BY THE DEFENDANT POLICE OFFICERS TO THE PLAINTIFF'S SERIOUS MEDICAL NEEDS**

**(42 U.S.C. § 1983 - 4th and 14th Amendments)**

91. All previous paragraphs of this complaint are incorporated herein by reference and are re-alleged as if restated.

92. This Count arises under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution.

93. After being having his bones broken by the defendant OFFICERS and while handcuffed and surrounded by the defendant OFFICERS, MEEKS was unable to seek or obtain medical attention on his own.

94. The defendant OFFICERS were obligated to take all reasonable measures under the circumstances to obtain prompt medical treatment for the life-threatening injuries they inflicted upon MEEKS and the defendant OFFICERS deliberately refused to do obtain such medical treatment.

95. Instead, the defendant OFFICERS responded by berating, insulting and humiliating MEEKS.

96. The defendant OFFICERS ignored MEEKS when he screamed in agony and when he reported more than two dozen times that he was having difficulty breathing. They

-14-

discounted his complaints without even bothering to investigate them.

97.  Defendant OFFICERS acted with reckless disregard and conscience-shocking indifference to MEEKS' serious medical needs, rights and safety by intentionally delaying necessary medical care.

98.  Defendant OFFICERS knew that their actions and failures to act placed MEEKS in substantial risk of serious harm and death.

99.  Defendant OFFICERS knew that their actions and their failures to act would cause MEEKS to suffer extreme and horrific pain, physical injury and possible loss of life.

100.      I n so acting and in failing to act, defendant OFFICERS deprived MEEKS of his clearly-established constitutional right to necessary medical care and treatment under the Fourteenth Amendment.

101.      MEEKS' injuries were a direct and proximate result of defendant OFFICERS' intentional, willful and callous disregard of his serious need for necessary medical treatment and caused unnecessary and wanton infliction of pain and physical injury on MEEKS, resulting in severe pain, physical injury and risk of death.  These deprivations resulted in the violation of his rights under the Fourteenth Amendment of the United States Constitution.

102.      In engaging in the conduct alleged herein, defendant OFFICERS  acted with the actual malice and with the intent  to injure, punish and harass MEEKS, and subjected MEEKS to cruel and unjust hardship in conscious disregard of his rights.

103.      In addition to the recovery of his costs, expenses, reasonable attorney's fees and

compensatory damages, MEEKS seeks exemplary and punitive damages against the

defendant OFFICERS due to their intentional misconduct.

### FOURTH CAUSE OF ACTION

**VIOLATION OF CIVIL RIGHTS: MUNICIPAL LIABILITY OF THE CITY OF
DANVILLE FOR ITS DELIBERATELY INDIFFERENT FAILURE TO TRAIN ITS
POLICE OFFICERS IN THE CONSTITUTIONAL LIMITATIONS IN THE USE OF
WEAPONS AGAINST FLEEING OR SUBDUED SUBJECTS**

**(42 U.S.C. § 1983 - 4th and 14th Amendments)**

104.    All previous paragraphs of this complaint are incorporated herein by reference and

are re-alleged as if restated.

105.    "A taser, like 'a gun, a baton, . . . or other weapon,' is expected to inflict pain or injury

when deployed. It, therefore, may only be deployed when a police officer is confronted

with an exigency that creates an immediate safety risk and that is reasonably likely to be

cured by using the taser." *Estate of Armstrong v. Village of Pinehurst*, 810 F.3d 892 (4th

Cir. 2016)

106.    MEEKS did not create an immediate safety risk when he fled with his arms

handcuffed behind his back.  Indeed, the officers knew (an stated on the scene) that there

was no chance he could escape.

107.    City of Danville policymakers know to a moral certainty that their police officers will

be required to arrest fleeing felons.

108.    The City of Danville has armed its officers with weapons, including electrical

conducted weapons and batons, in part to allow them to accomplish this task.

109.    While the City of Danville maintains facially constitutional written policies governing

-16-

the conduct of the DPD police officers, it is obvious from the recorded conduct of these officers at the scene that they have not been trained in the constitutional limits of the use of conducted electrical weapons (Tasers).

110.    Specific facts that evince the lack of training of the DPD police officers are:

○    The defendant OFFICERS at the scene discussed the use of the Taser against MEEKS and one of them even congratulated AMOS on its use, despite knowing that MEEKS was handcuffed.  They obviously (and incorrectly) believed that the use of a Taser against a handcuffed and non-violent fleeing subject was proper, lawful and constitutional.

○    AMOS frankly described his purported basis for deployment of the Taser against MEEKS (namely, only that MEEKS fled in handcuffs) and none of the defendant OFFICERS at the scene, including senior officers, expressed criticism or disagreement with the purported basis of this objectively unreasonable and unconstitutional use of force, despite the fact that this purported basis was contrary to DPD written policy and orders.  The defendant OFFICERS obviously believed that the use of a Taser against a non-violent fleeing subject was proper, lawful and constitutional.

○    Several defendant OFFICERS assisted or witnessed SHIVELY in using force to slam MEEKS from a sitting position headfirst into the ground in a manner that was not only objectively excessive, unreasonable and unconstitutional, but also a clear violation of DPD written policies and orders.   These defendant OFFICERS obviously (and incorrectly) believed that this use of force was proper, lawful and constitutional.

-17-

○ SHIVELY deployed a baton in a manner that was not only objectively unreasonable and unconstitutional, but also contrary to DPD written policies and orders.   The defendant OFFICERS at the scene witnessed SHIVELY and assisted him in deploying the baton.  The defendant OFFICERS obviously (and incorrectly) believed that their conduct was proper, lawful and constitutional.

○ SHIVELY climbed onto MEEKS' back while MEEKS lay face-down in the yard with his arms cuffed behind him.  SHIVELY took this position in a dangerous manner that was not only objectively unreasonable and unconstitutional, but also contrary to DPD written policies and orders.  The defendant OFFICERS at the scene witnessed SHIVELY and assisted him in this dangerous and excessive use of force and SHIVELY and the defendant OFFICERS obviously (and incorrectly) believed that their conduct was proper, lawful and constitutional.

○ Multiple officers participated in or witnessed the unconstitutional use of force against MEEKS and did not resist or report the incident, as required by DPD written policies and orders.

○ All of the defendant officers heard MEEKS' cries of pain and his two dozen complaints of difficulty in breathing, but none of them rendered or summoned aid, in a manner that was not only clearly unconstitutional, but also against DPD written policies and orders.

111.   The need to train officers in the constitutional limitations on the use of conducted electrical weapons and batons is so obvious that that the City of Danville's failure to do is properly characterized as "deliberate indifference" to constitutional rights.  See,  e.g.,

-18-

*City of Canton, Ohio v. Harris,* 489 U.S. 378 (1989)

112.   The deliberately indifferent failure of the City of Danville to train its police officers in the constitutional limitations on the use of conducted electrical weapons and batons was a direct cause of MEEKS' injuries.

## FIFTH CAUSE OF ACTION

### CIVIL BATTERY

### (Virginia Common Law Claim)

113.   All previous paragraphs of this complaint are incorporated herein by reference and are re-alleged as if restated.

114.   SHIVELY, acting in concert with the defendant OFFICERS, battered MEEKS on May 25, 2018 when they broke MEEKS' ribs and clavicle and caused the other injuries as described above.

115.   MEEKS did not consent to being assaulted or battered and did not consent to offensive touching that led to his injuries.

116.   Neither SHIVELY nor the other defendant OFFICERS were justified in using a baton to break MEEKS' clavicle.

117.   Neither SHIVELY nor the other defendant OFFICERS were justified in placing weight on MEEKS' back with such force that it broke MEEKS' ribs.

118.   SHIVELY and the defendant OFFICERS acted with actual malice when they assaulted and battered MEEKS on May 25, 2018.

119.   SHIVELY and the defendant OFFICERS acted in wanton and willful disregard of

MEEKS' rights when they assaulted and battered on May 25, 2018.

120.   MEEKS is entitled to recover damages, including compensatory and punitive damages from SHIVELY and the defendant OFFICERS.

## SIXTH CAUSE OF ACTION

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

**(Virginia Common Law Claim)**

121.   All previous paragraphs of this complaint are incorporated herein by reference and are re-alleged as if restated.

122.   While MEEKS sat on the ground after having his clavicle and his ribs broken by the defendant OFFICERS; while he was slipping in an out of consciousness in agonzing pain; while he was pleading with the officers that he could not breathe; the OFFICERS ignored his pleas and instead mocked and insulted him.

123.   The above-conduct was outrageous and intolerable.  It was intended to cause unbearable emotional distress to MEEKS.

124.   MEEKS is entitled to recover damages incurred as a result of this outrageous conduct.

## SEVENTH CAUSE OF ACTION

### GROSS, WILLFUL, WANTON AND RECKLESS NEGLIGENCE OF OF THE DEFENDANT OFFICERS AND THE CITY OF DANVILLE

**(Virginia Common Law Claim)**

125.   All previous paragraphs of this complaint are incorporated herein by reference and are re-alleged as if restated.

126.    The defendant OFFICERS had a legal duty to use care to protect MEEKS from harm.

127.    The OFFICERS breached their duty to MEEKS when they, acting in concert:

- Used more force than necessary to arrest him.

- Climbed upon his back after arresting him and deployed a baton without need, thereby breaking his ribs and clavicle.

- Failed to immediately summon medical assistance when MEEKS reported trouble breathing.

128.    The OFFICERS acted with utter disregard to MEEKS' rights or welfare when they acted in manner described above.

129.    The above-described action of the OFFICERS was willful, wanton and reckless.

130.    The injuries MEEKS sustained as described above were directly and proximately caused by the negligence of the OFFICERS.

131.    MEEKS is entitled to recovers damages, including punitive damages, from the OFFICERS and from the CITY OF DANVILLE.

**WHEREFORE** your Plaintiff, Eldridge Roosevelt Meeks, III, requests that this Court grant him the following relief:

(a)    Judgment against each of defendants, jointly and severally, in the amount of TEN MILLION DOLLARS ($10,000,000.00) and such additional damages as may be proven at trial.

(b)    Punitive damages from each of the defendant OFFICERS in amount proven upon

trial;

(c)     Costs and expenses, including reasonable attorney's fees;

(d)     Injunctive relief to prevent further unlawful conduct;

(e)     All such other legal and equitable relief as this Court deems appropriate.

**A JURY TRIAL IS DEMANDED**

Respectfully submitted,

**ELDRIDGE ROOSEVELT MEEKS, III**
**By Counsel**

**JAMES RIVER LEGAL ASSOCIATES**
**7601 Timberlake Road**
**Lynchburg, Virginia 24502**
**P (434) 845-4529**
**F (434) 845-8536**

**By: /s/ M. Paul Valois**
      **M. Paul Valois, Esquire**
      **Counsel for Defendant**
      **Virginia State Bar No. 72326**