IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

ELDRIDGE ROOSEVELT MEEKS, III,

        Plaintiff,

                                                    Civil Action No. 4:20-cv-00029

v.

THE CITY OF DANVILLE, et al.
        Defendants.

## DEFENDANTS' BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

COME NOW Defendants, by counsel, and file this their Brief in Support of their Motion for Summary Judgment.

### I. Procedural Background

Plaintiff filed his original Complaint on May 24, 2020, against Defendants alleging various civil rights violations under 42 U.S.C. §1983, as well as common law civil claims for (i) battery, (ii) intentional infliction of emotional distress, and (iii) gross, willful, wanton, and reckless negligence. Plaintiff then amended his earlier filing by filing his First Amended Complaint on October 8, 2020.

### II. Statement of Undisputed Material Facts

The pertinent and material facts of this case are substantially memorialized on video and/or audio tapes recorded by the body-worn cameras of the officers involved in the events immediately preceding, during, and after Meek's arrest on May 25, 2018. First Amended Complaint at ¶ 6. On May 25, 2018, several officers of the Danville Police Department ("DPD"), including the individual defendants, assembled to arrest Meeks on outstanding felony

warrants. First Amended Complaint at ¶ 2. The officers knew Meeks and knew that he had a history of eluding arrest. Id. Officers located Meeks hiding in a bathroom of a duplex home located at 265 Lovell Drive. Id. Meeks was apprehended and his wrists were handcuffed behind his back. Id.

After informing Meeks that he was under arrest, Officer Amos began to escort Meeks out of the residence. Officer Amos BWC Video 5-25-2018 at 03:45-04:35, attached hereto in its entirety and incorporated herein as Exhibit 1. Upon reaching the front door and as he exited the structure, Mr. Meeks took off running. Id. Officer Amos gave chase. Id. In the process, he deployed his TASER X26P in Meeks's direction. Meeks then tripped and fell – his legs caught in his pants which had fallen to his ankles. Id. After Meeks fell, Officer Shively was able to regain custody of Meeks. See Officer Shively BWC Video 5-25-2018, attached hereto in its entirety and incorporated herein as Exhibit 2.

Between December 22, 2020 and December 29, 2020, Senior Investigations Engineer Bryan Chiles, with Axon Enterprise, Inc., performed a thorough analysis of the X26P energy weapon used by Officer Amos the night of May 25, 2018. Chiles documented his findings in a report prepared at Defendants' request, and which is attached hereto in its entirety and incorporated herein as Exhibit 3. In arriving at his findings, Chiles evaluated Plaintiff's Complaint; an X26P Event Log, generated May 29, 2018; pulse graphs; and body worn camera footage from Officers Hawkins, Amos, Pickerel, Shively, and Walker's respective positions. Ex. 3, pg. 3.

Chiles made the following findings. The X26P energy weapon experienced 1 minute and 18 seconds of positive clock drift on May 25, 2018, meaning the device was running slightly

ahead of the actual time. Id. at 4. The X26P energy weapon's trigger was activated only once the night of May 25, 2018. When corrected for clock drift, Chiles calculated that trigger pull occurred at 23:21:48 EDT. Id. At that time, the X26P energy weapon discharged into a high impedance load, typical of arcing in open air for the first second, then could no longer discharge due to the lack of an electrical connection for the final four seconds. Id. These unrebutted facts prove that Meeks could not have been affected by the X26P energy weapon deployment, due to the lack of a completed electrical circuit, and therefore, his fall and injuries were not the result of the Taser's deployment but rather were the results of Meeks continuing to attempt to escape police custody while his pants were falling down around his ankles. Id.

TASER energy weapons are designed and intended to cause Neuromuscular Incapacitation (NMI) given certain required preconditions. Id. at 8. These include, but are not limited to: (1) a completed and maintained circuit between the electrodes to allow electrical current to flow; (2) sufficient distance between the electrodes; and (3) sufficient motor-nerve mediated muscle mass between the electrodes. Id. Barring the simultaneous existence of these factors, the device will not function as intended. Id.

In Officer Amos's body worn camera between timestamp 04:40 and 04:41 a loud electric arcing noise can be heard as Officer Amos fires his Taser. Ex. 1 at 04:40-04:41. Master Taser Instructor Lt. Erika Land writes in her expert report, attached hereto in its entirety and incorporated herein as Exhibit 4, that, "[t]he loud arcing noise means there is a disconnect and the circuit has not been completed." Exhibit 4. She goes on to explain that "this means, "Mr. Meeks would not have been affected by any electrical impulse from the Taser device." Id. Chiles confirms Land's expert opinion. He writes, "[t]he audible sound that an X26P energy

weapon makes during a deployment will vary depending on whether there is a probe connection to tissue or not." Ex. 3 at 14. When the weapon discharges in the air, it makes a loud "clacking" sound. This specific sound occurs because the high voltage being emitted through the probes ionizes the air molecules in making a conductive path. Id. at 15. When the probes have properly lodged into conductive tissue, the high voltage arcing sound is not generated. Id.

On December 22, 2020, Dr. Stefan Duma prepared an expert report in connection with this case, which is attached hereto in its entirety and incorporated herein as Exhibit 5. Dr. Duma concluded that "Meeks extensive injuries to his head and thorax were the direct result of his fall to the ground while running from the Police Officers . . . Officer Shively did not cause any of Mr. Meeks' injuries." Id. at 3.

Meeks' own proffered expert, Dr. William C. Andrews, agrees with Dr. Duma's opinion. In his report dated November 27, 2020, attached hereto in its entirety and incorporated herein as Exhibit 6, Dr. Andrews writes, "[t]he cause of [Meeks's] injuries was his fall. A police officer then restrained him further after the fall. This action did not cause his injuries." Ex 6 at ¶ 4. To date, Plaintiff has not disclosed a qualified expert, whether biomechanical, medical, scientific, or one specializing in Taser X26P energy weapons, who can opine that Meeks' injuries, sustained the night of May 25, 2018 were caused in any way by actions of the Danville Police Department officers present.

After initially being charged with felony escape from law enforcement, Mr. Meeks eventually entered a guilty plea to misdemeanor flight from law enforcement. First Amended Complaint ¶ 45 n. 1.

On June 17, 2020, W. Clarke Whitfield, Jr., City Attorney for the City of Danville,

Virginia executed a sworn affidavit stating:

> "In my role as City Attorney, it has come to my knowledge that Mr. Eldridge R. Meeks, III has filed a Complaint naming as defendants the City of Danville and several law enforcement officers employed with the Danville Police Department. The Complaint Alleges various tort claims under Virginia Common law in the fifth, sixth and seventh causes of action, including claims of negligence of the City and the named officers. . . The City's records have been examined and, based on that examination, I affirm that no notice pursuant to Section 15.2-209 of the Code of Virginia was contained in the electronic or paper records of the City of Danville regarding the state law tort claims of civil battery, intentional infliction of emotional distress, or gross, willful, wanton and reckless negligence."

A copy of this affidavit is attached hereto in its entirety and incorporated herein as Exhibit 7.

### III.  Summary Judgment Standard

Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure is governed by general principles as well as the doctrine of qualified immunity.

#### a.  Summary Judgment Generally

Summary judgment is appropriate when a court, viewing the record as a whole in the light most favorable to the nonmoving party determines that there exists no genuine issue of material fact and that the moving party is entitled to summary judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 217, 322-24 (1986); see also F. R. Civ. P. 56. If the moving party produces evidence suggesting that there is not a genuine and material dispute, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts", as the existence of a scintilla of evidence is insufficient to defeat a motion for summary judgment. See Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp., et al., 475 U.S. 574, 586 (1986); Catawba Indian Tribe of S.C. v. South Carolina, 978 F.2d 1334, 1339 (4th Cir. 1992). While the nonmoving party is entitled to have the facts viewed in the light most

favorable to their cause, a motion for summary judgment "requires the nonmoving party to go beyond the pleadings…and designate specific facts showing that there is a genuine issue for trial." Celotex Corp., 477 U.S. at 324 (internal quotation marks omitted). The nonmoving party must demonstrate specific facts, as opposed to general allegations, that presents an issue worthy of a trial. See Lujan Defenders of Wildlife, 504 U.S. 555, 566-67 & note 3 (1992).

In so designating specific facts and issues to be determined at trial, the nonmoving party must indicate facts that are material and issues that are genuine. See Scott v. Harris, 550 U.S. 372, 380 (2007); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Guinness PLC v. Ward, 955 F.2d 875, 882 (4th Cir. 1992). Disputed facts are "material" only if they are necessary to resolve the case, and issues are "genuine" only if based on more than speculation or inference. Thompson Everett, Inc. v. National Cable Advertising, L.P., 57 F.3d 1317, 1323 (4th Cir. 1995); See Hux v. City of Newport News, Va., 451 F.3d 311, 315 (4th Cir. 2006) ("[T]he genuineness and materiality requirements express the sound proposition that litigation for its own sake is not a judicious use of resources.").

Where the record indicates no rational trier of fact could find for the nonmoving party, summary judgment is appropriate. Matsushita, 475 U.S. 587.

### b. Qualified Immunity

In a suit against an officer for an alleged violation of a constitutional right, the requisites of a qualified immunity defense must be considered in proper sequence. Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of a trial are avoided where the defense is dispositive. "Qualified immunity is 'an entitlement not to stand trial or face the burdens of litigation." Brown v.

Gilmore, 278 F.3d 362, 366-67 (4th Cir. 2002) citing Mitchell v. Forsyth, 472 U.S. 511 (1985). The privilege is "an *immunity from suit* rather than a mere defense to liability; and, like absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." Id. As a result, "we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation." Hunter v. Bryant, 502 U.S. 224, 227 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (*per curiam*); Saucier v. Katz, 533 U.S. 194, 200-01 (2001) (emphasis in original). Saucier established a two-prong test to determine whether or not police officers enjoy qualified immunity. First, a court must determine "whether a constitutional right would have been violated on the facts alleged." Brown v. Gilmore, 278 F.3d 362, 267 (4th Cir. 2002) (internal citations omitted). Second, the Court must determine "whether the right was clearly established at the time such that it would be clear to an objectively reasonable officer that his conduct violated that right." Id. at 367 (internal citations omitted); Harlow v. Fitzgerald, 457 U.S. 800 (1982). "If no constitutional right would have been violated, even when the facts are viewed in the best light for the injured plaintiff, the analysis ends; the plaintiff cannot prevail." Jones v. Buchanan, 325 F.3d 520, 526 (4th Cir. 2003).

The gravamen of Plaintiff's allegations is that Officers Amos, Shively, Land, Pulley, Epps, Hawkins, and John Does 1-10 were excessive in their use of force against Eldridge Meeks on May 25, 2018, thereby depriving him of his Fourth Amendment right against unreasonable seizure. Notably, the only specific instances of force of which Plaintiff complains are limited to the actions of Officers Amos and Shively. Defendants contend that even in the light most favorable to the Plaintiff the evidence, when taken as a whole, does not warrant abrogation of qualified immunity.

### IV. Argument

Excessive force claims under 42 U.S.C. §1983 are analyzed under a constitutional framework. 42 U.S.C. "§1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred. In addressing an excessive force claim brought under §1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." Graham v. Conner, 490 U.S. 386, 393-94 (1989) (internal quotations marks and citations omitted). "In most instances, that will be either the Fourth Amendments' prohibition against unreasonable seizures of the person, or the Eighth Amendment's ban on cruel and unusual punishments . . .". Id. at 394.

Here, Plaintiff alleges that Officers Amos and Shively with the Danville Police Department were excessive in their use of force against him on May 25, 2018, thereby depriving him of his Fourth Amendment right against unreasonable seizure. In addition, he alleges municipal liability against the City of Danville for deliberate indifference in its failure to train its officers, along with various state law claims.

To prevail on a claim for a civil rights violation under 42 U.S.C. § 1983, a plaintiff must establish that he has been deprived of a right, privilege, or immunity secured by the Constitution or laws of the United States and that the conduct about which he complains was committed by a person acting under color of state law. Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 658 (4th Cir. 1998); See also Conner v. Donnelly, 42 F.3d 220, 223 (4th Cir. 1995). "Liability will only lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights. The doctrine of respondeat superior has no application under § 1983." Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977) (quoting

Bennett v. Gravelle, 323 F. Supp. 203, 214 (D. Md. 1971)); see also Monell v. Dep't of Soc. Servs., 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).

### a. The Axon Taser Deployed against Eldredge Meeks Did Not Connect

Fox hunters of yore would sometimes drag a red herring across a fox's trail, masking the fox's scent and confusing the hounds, all in an effort to prolong the hunt. Today, Plaintiff has dragged the notion of the Taser being deployed against him throughout his complaint, masking the fact that it never connected with his person and confusing the issues before the Court, all in an effort to prolong this litigation. The fact that Officer Amos deployed his Taser in the vicinity of Meeks is completely irrelevant, because the unrebutted scientific evidence established that the Taser never connected with his person and therefore cannot be the cause of any of his injuries resulting from a fall during his May 25, 2018 encounter with law enforcement. See the expert reports of Chiles and Land, attached hereto as Exhibits 3 and 4.

Plaintiff's first cause of action states that Officer Amos used excessive force in the deployment of his Taser in violation of the Fourth and Fourteenth Amendment to the United States Constitution.[1] To prevail on this claim, and for liability to attach, Plaintiff must affirmatively establish that he has been deprived of a right, privilege, or immunity secured by the Constitution. Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 658 (4th Cir. 1998); Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977). The Fourth Amendment protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend IV.

---

[1] Amos' deployment of his Taser in the direction of Plaintiff Meeks was contrary to Danville Police Department policy. However, any evidence with regard to the Taser's deployment is irrelevant and immaterial in this case. The unrefuted scientific evidence in this regard establishes that the Taser had no effect on Meeks, and the violation of that internal policy is not relevant.

Here, Plaintiff must affirmatively establish that in deploying a Taser against him, Officer Amos effectuated a seizure of Mr. Meeks during their encounter on May 25, 2018. The record before the Court does not support such a finding. This Court cannot find that Officer Amos's act of deploying his Taser on May 25, 2018 in any way caused Mr. Meeks to be seized for purposes of the Fourth Amendment. The scientific evidence, as documented in the record now before the Court, simply does not support such a claim. Officer Shively's body worn camera footage shows Shively and others officers closely examining Mr. Meeks person and the area immediately surrounding him from the time he first trips over his fallen pants until the time that EMS responders arrive on scene – in total, about ten minutes. During that time, multiple officers examining Meeks's person note that there is no indication that the probes from the Taser implanted in his back. Lt. Land, in her report writes, "both probes were located on the ground and not in Mr. Meeks body . . . as the probe barb did not come into contact or penetrate and embed in his skin. It is unlikely that Mr. Meeks felt anything at all from the device as there were no injuries consistent with being exposed to the Taser device." Ex. 4.

The record before this Court via the reports of experts Chiles and Land, irrefutably establishes that as a scientific fact Amos' deployment of Taser had no physical effect on Meeks. The Plaintiff, confronted with this fact, offers a mere allegation, nothing more than speculation, that the Taser caused his fall. This mere allegation is insufficient to create a "genuine" issue for trial. See National Cable Advertising cited above.

Meeks' own proffered expert, Dr. William C. Andrews, reports that he found, "[t]he cause of [Mr. Meeks'] injuries was his fall." Ex. 6. There is no indication in Dr. Andrews report that Meeks sustained puncture wounds to his back. There are no photographs of any such

injuries in the record. To date, Plaintiff has not disclosed a qualified scientific expert who can opine that Mr. Meeks' injuries, sustained the night of May 25, 2018 were caused in any way by Officer Amos's decision to deploy his Taser. Nor is there any indication that any of Meeks's injuries were caused by any actions undertaken by Officers of the Danville Police Department. Rather, Meeks asks this Court to permit his case to proceed to trial merely on the unsubstantiated allegation that he felt something.

The data retrieved from Officer Amos's Taser by Chiles proves that the Taser did not come into contact with Meeks the evening of May 25, 2018. In his report, Chiles notes that the trigger of Officer Amos's Taser was only activated once the evening of May 25, 2018. "The pulse graph for the trigger activation . . . indicates the [Taser] discharged into a high impedance load, typical of arcing in open air for the first second, then could no longer discharge due to a lack of electrical connection for the final 4 seconds." Ex 3 at 4. Officer Amos's body worn camera captured the entirety of his encounter with Meeks, including the deployment of his Taser. On the video between timestamp 04:40 and 04:41, a loud clacking sound can be heard during the first second of Taser activation. Chiles writes that this sound is indicative of the weapon discharging in this open air. The loud "clacking" noise is generated by the high voltage emitted through the probes, which ionizes the air molecules to make a conductive path. Id. at 15. When the probes have properly lodged into conductive tissue, the high voltage arcing sound is not generated. Id.

Given the unrebutted and overwhelming scientific evidence that the Taser did not make contact with Meeks's person, there is no basis for the Court to attribute any of the injuries he sustained the night of May 25, 2018 to the actions of Officer Amos or any other officer. For

these reasons, this Court should grant Defendants' Motion for Summary Judgment on Count I of the Plaintiff's First Amended Complaint, further finding as to Count I there is no material fact genuinely in dispute.

### b. The Force Used Against Eldridge Meeks was Objectively Reasonable

The test of the reasonableness of the force used is an objective one <u>Id.</u> at 397 ("the reasonableness inquiry in an excessive force case is an objective one: the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional.").

"The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application." <u>Bell v. Wolfish</u>, 441 U.S. 520, 559 (1979). Rather, the "proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." <u>Graham v. Connor</u>, 490 U.S. at 396; see also <u>Tennessee v. Garner</u>, 471 U.S. 1, 8-9 (1985) (the question is "whether the totality of the circumstances justifie[s] a particular sort of . . . seizure.").

The record in this case establishes that the officers' conduct on the night Meeks was arrested was objectively reasonable. He was found hiding in a bathroom. He was arrested and handcuffed. He attempted to run from the police, while his hands were cuffed behind his back. He tripped and fell not because of an ineffective Taser deployment but because his pants had

to his ankles. The experts agree this fall caused Meeks to sustain the injuries of which he complains in this case. None of those injuries were caused by any use of force on the part of any of the Defendant officers. Thus, Plaintiff's use of force claims must fail.

### c. Given the Officers' Reasonable Use of Force, the Remaining State Law Claims Fail.

If this Court finds that the Officers' actions were objectively reasonable and grants summary judgment as to the excessive force allegations, then the remaining pendent state law claims, namely Assault and Battery (Count IV), Intentional Infliction of Emotional Distress (Count V), and gross, willful, wanton and reckless negligence (Count VI) should likewise be dismissed. Milstead, 91 F. Supp. 2d, supra.; see also Waller v. City of Danville, 2005 U.S. Dist. LEXIS 34584, 20 (W.D. Va: 2005)(holding that if the defendant officers' actions are reasonable as a matter of law, then the state court claims cannot be sustained); see also Sigman, 161 F.3d supra.

Further, Plaintiff's remaining state law negligence claims against the City of Danville must fail for failure to give the required statutory notice pursuant to Virginia Code §15.2-209. Virginia Code §15.2-209 states, in pertinent part, that "[e]very claim cognizable against any county, city, or town for negligence shall be forever barred unless the claimant or his agent, attorney, or representative has filed a written statement of the nature of the claim, which includes the time and place at which the injury is alleged to have occurred, within six months after such cause of action accrued." On June 17, 2020, W. Clarke Whitfield, Jr., City Attorney for the City of Danville, Virginia executed a sworn affidavit stating:

> "In my role as City Attorney, it has come to my knowledge that Mr. Eldridge R. Meeks, III has filed a Complaint naming as defendants the City of Danville and

> several law enforcement officers employed with the Danville Police Department. The Complaint Alleges various tort claims under Virginia Common law in the fifth, sixth and seventh causes of action, including claims of negligence of the City and the named officers... The City's records have been examined and, based on that examination, I affirm that no notice pursuant to Section 15.2-209 of the Code of Virginia was contained in the electronic or paper records of the City of Danville regarding the state law tort claims of civil battery, intentional infliction of emotional distress, or gross, willful, wanton and reckless negligence."

(Whitfield Affidavit).

The present rule in Virginia, codified as Va. Code §15.2-209, is that the giving of the required notice is mandatory and is an essential element of plaintiff's case, which he must allege and prove. Daniel v. City of Richmond, 199 Va. 490, 100 S.E.2d 763 (1957). The notice requirement of §15.2-209 is mandatory. Town of Crewe v. Marler, 228 Va. 109, 319 S.E.2d 748 (1984); Miles v. City of Richmond, 236 Va. 341, 373 S.E.2d 715 (1988). The purpose of this rule is to afford the city authorities the opportunity to investigate the circumstances, examine the locality in which the injury is alleged to have occurred, and to discover the witnesses promptly so as to ascertain the facts while their recollections are fresh. City of South Norfolk v. Dail, 187 Va. 495, 47 S.E.2d 405 (1948).

### d. Since the Officers did not Violate Eldridge Meeks's Civil Rights, Vicarious Liability Cannot Attach to the City of Danville or any other Defendant

Count III of Plaintiff's First Amended Complaint alleges municipal liability against the City of Danville for its alleged deliberately indifferent failure to train its police officers on the constitutional limitations on the use of weapons against fleeing or subdued subjects. It is well settled law that a civil rights violation by a municipal officer is a condition precedent to holding the municipality liable for damages.

> "[In] an action for damages, neither Monell v. New York City Dept. of Social Services, 436 U.S. 658 (1978) nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact the jury has concluded that the officer inflicted no constitutional harm."

City of Los Angeles v. Heller, 475 U.S. 796, 810-811. This case reiterates a major tenant of civil jurisprudence – if there is no injury, there can be no recovery.

Here, evidence on this record establishes that Meeks was in no way harmed by the actions of Officer Amos in deploying a failed Taser attempt. Experts witnesses for both the Plaintiff and Defendants agree that Mr. Meeks's injuries were not caused by Officer Shively's restraint. And nothing in this record establishes any liability on the part of any of the other named Defendants. In light of the totality of the circumstances surrounding the events of that evening, Officer Shively's actions were objectively reasonable, as were Officer Amos' actions, given the irrelevance of the Taser deployment. For these reasons, this Court should grant Defendants' Motion for Summary Judgment on Count III of the Plaintiff's First Amended Complaint.

Finally, Plaintiff's First Amended Complaint is devoid of allegations or facts that constitute a cognizable violation of any constitutional right due to the actions of Officers Larry Dwayne Land, John Pulley, Jonathan Epps, Todd Hawkins, or John Does 1-10. Plaintiff does not sufficiently allege any actions undertaken by any of these men that caused him harm. There is no genuine dispute as to any material fact surrounding acts by any of the aforenamed individuals on the night of May 25, 2018, and for that reason, they should all be dismissed from this suit.

### V. Conclusion

The actions of responding officers from the City of Danville Police Department and their interactions with Eldridge Meeks on May 25, 2018, were objectively reasonable. The Officers used a reasonable amount of force given the totality of the circumstances and are entitled to qualified immunity. Eldridge Meeks injured himself when he tripped and fell as a result of his falling pants as he attempted to flee from pursuing officers. His injuries were not caused by the deployment of an Axon Energy Weapon Taser against him, nor were they caused by any actions or inactions of these Defendants. Accordingly, they cannot be held liable for any constitutional violation under 42 U.S.C §1983. Since there is no §1983 violation, there can be no vicarious municipal liability, nor can there be any liability pursuant to any of the Plaintiff's pendent state law claims, due both to the lack of statutory notice and reasonableness of the Officers' actions.

WHEREFORE, your Defendants, the City of Danville, Officer Jacob Amos, Officer Larry Dwayne Land, Officer John Pulley, Officer Johnathan Epps, Officer Todd Hawkins, Officer William Shively, and John Does 1-10, pray this Court grant their motion for summary judgment, dismiss Plaintiff's First Amended Complaint with prejudice, and provide them with any further relief that is deemed appropriate and just.

CITY OF DANVILLE

JACOB AMOS

LARRY DWAYNE LAND

JOHN PULLEY

JONATHAN EPPS

TODD HAWKINS

WILLIAM SHIVELY

and

JOHN DOES 1-10

By Counsel

Counsel:

/s/ *James A. L. Daniel*
James A. L. Daniel, Esq. (VSB No. 03881)
Martha White Medley, Esq. (VSB No. 21171)
Michael A. Nicholas, Esq. (VSB No. 80749)
Panagiotis C. Kostopanagiotis, Esq. (VSB No. 94215)
Katerina Holland, Esq. (VSB No. 91073)
DANIEL, MEDLEY & KIRBY, P.C.
110 North Union Street
P. O. Box 720
Danville, VA 24543-0720
(434) 792-3911 Telephone
(434) 793-5724 Facsimile
jdaniel@dmklawfirm.com
mmedley@dmklawfirm.com
mnicholas@dmklawfirm.com
pck@dmklawfirm.com
kholland@dmklawfirm.com
*Counsel for Defendants*

CERTIFICATE OF COUNSEL

I hereby certify that on this 18th day of May, 2021, I electronically filed the foregoing Brief in Support of Defendants' Motion for Summary Judgment with the Clerk of Court using the CM/ECF system which will send notification of such filing to counsel for Plaintiff, M. Paul Valois, Esq., James River Legal Associates, 7601 Timberlake Road, Lynchburg, Virginia 24502.

/s/ James A. L. Daniel